THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTEUM COMPANY, LLC, | CASE NO. C17-1252-JCC |
| Plaintiff, | ORDER |
| v. | |
| NATIONAL UNIVERSITY OF SINGAPORE, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's motion to amend its First Amended Complaint (Dkt. No. 29). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

Plaintiff Inteum Company, LLC licensed knowledge management software to Defendant National University of Singapore for many years, but lost its contract to competitor Wellspring in a 2016 bidding process. (Dkt. No. 29 at 2.) Plaintiff subsequently sued Defendant for breach of contract and misappropriation of trade secrets. (Dkt. No. 1-2.) The Court dismissed the initial complaint for failure to state a claim, but granted Plaintiff leave amend. (Dkt. No. 24.) Plaintiff filed an amended complaint, and the parties began conducting discovery. (Dkt. No. 25.) Based

ORDER
C17-1252-JCC
PAGE - 1

on documents obtained in discovery, Plaintiff now moves to amend its complaint to add a claim for civil conspiracy, as well as supporting factual allegations. (Dkt. No. 29 at 1.) Defendant opposes the addition of this cause of action as futile and asks the Court to strike certain factual allegations. (Dkt. No. 30 at 6.)

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Courts should "freely" grant such leave "when justice so requires." *Id*. However, a court may deny leave to amend based on futility of amendment. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). An amendment is futile if it attempts to add a claim that could not withstand a motion to dismiss. *Jones v. Community Redevelopment Agency of Los Angeles*, 733 F.2d 646, 650–51 (9th Cir. 1984).

### B. Analysis

To establish a claim for civil conspiracy, a plaintiff must show "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) . . . an agreement to accomplish the conspiracy." *Woody v. Stapp*, 146 Wn. App. 16, 22 (Wash. Ct. App. 2008) (internal citation omitted). A claim for civil conspiracy must be predicated on "a cognizable and separate underlying claim." *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011).

Plaintiff bases its proposed civil conspiracy claim on allegations of (1) misappropriation of its trade secrets, (2) interference with its prospective economic advantage, (3) breach of contract, and (4) bid-rigging in violation of the Singapore Government Procurement Act ("SGPA"). (Dkt. Nos. 29 at 1, 30 at 9.) The Court finds that none of these underlying allegations is legally sufficient to support a civil conspiracy claim. Therefore, the addition of Plaintiff's proposed civil conspiracy claim would be futile.

//

1. Misappropriation of Trade Secrets

Plaintiff alleges Defendant conspired with Wellspring to misappropriate its trade secrets. (Dkt. No. 29-1 at 19.) Defendant argues that this claim is preempted by Washington's Uniform Trade Secret Act ("USTA"). (Dkt. No. 30 at 13.) The UTSA "displaces conflicting tort, restitutionary, and other [Washington] law pertaining to civil liability for misappropriation of a trade secret." Wash. Rev. Code 19.108.900(1). It does not preempt "contractual or other civil liability or relief that is not based on misappropriation of a trade secret." *Id*. at 19.108.900(2)(a).

The preemptive scope of the UTSA is an unsettled issue in Washington. *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1197 (W.D. Wash. 2015). Other UTSA jurisdictions are split between a "weak" and a "strong" view of preemption. *Id*. at 1198–99. Under the "strong" view, a plaintiff "may not rely on acts that constitute trade secret misappropriation to support [another cause] of action" even if it requires proof of additional elements. *Id*. at 1198; *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App. 2007). To avoid preemption, a claim must be "wholly independent" of facts used to prove trade secret misappropriation. *T-Mobile USA*, 115 F. Supp. 3d at 1199. Alternatively, in jurisdictions adopting the "weak" view, a claim is not preempted if it includes additional elements that "require some allegation or factual showing beyond those required under the UTSA." *Thola*, 164 P.3d at 530 n. 5.

The Court determines that the strong form of preemption applies. Courts in this district have routinely predicted that the Washington Supreme Court would embrace this approach. *T-Mobile USA, Inc.*, 115 F. Supp. 3d at 1199 (collecting cases applying Washington law); *International Paper Co. v. Stuit*, No. C11-2139-JLR, slip op. at 8 (W.D. Wash. May 21, 2012) ("the weight of authority has tipped away from" the view that common law claims are not preempted if the claims require additional elements). This conclusion is informed by the Washington Court of Appeals' statement that a plaintiff "may not rely on acts that constitute trade secret misappropriation to support other causes of action." *Thola*, 164 P.3d at 530 (quoting

*Ed Nowogroski Ins., Inc. v. Rucker*, 944 P.2d 1093 (Wash. Ct. App. 1994), *aff'd* 971 P.2d 936 (Wash. 1999).

The strong form of preemption would bar Plaintiff's cause of action for conspiracy to misappropriate trade secrets.[1] Plaintiff's claim is supported by facts identical to those supporting its trade secret misappropriation claim. Because the causes of action are not factually independent, the claim is preempted by the UTSA. *See id*. (adopting this analytical framework applied by a "majority of UTSA jurisdictions"). Therefore, the Court finds that Plaintiff's addition of a claim for conspiracy to misappropriate trade secrets would be futile.

### 2. Interference with Prospective Economic Advantage

Plaintiff also seeks to allege a conspiracy to tortuously interfere with its prospective economic advantage.[2] (Dkt. No. 29-2 at 19.) Under Washington law, "[a] party cannot tortiously interfere with its own contract" or prospective economic advantage. *Reninger v. State Dept. of Corr.*, 951 P.2d 782, 789 (Wash. 1980); *Olympic Fish Products, Inc. v. Lloyd,* 611 P.2d 737, 738 (Wash. 1980). An interfering party must be an "intermeddling third party." *Vazquez v. DSHA*, 974 P.2d 348, 355 (Wash. Ct. App. 1999).

Plaintiff attempts to circumvent this rule by arguing that Wellspring is the third party that intentionally interfered with Plaintiff's business expectancy, and Defendant is a co-conspirator. (Dkt. No. 32 at 5–6.) As a result, Defendant is "a party to every act of [Wellspring]" and therefore liable for Wellspring's alleged interference. (*Id*.) This is an interesting proposition. However, this approach ignores the principle that common law civil conspiracy is not a standalone cause of action. *Gossen*, 819 F. Supp. 2d at 1171. This cause of action must be predicated on a separately actionable underlying claim. *Id*. There is no actionable underlying claim against Defendant for interference with a prospective economic advantage, thus there is no

---

[1] Plaintiff's argument that conspiracy requires proof of elements beyond those required to show misappropriation of a trade secret rests on the weak view of preemption, which this Court declines to adopt. (Dkt. No. 32 at 3–4.)

[2] Plaintiff does not assert a standalone tortious interference claim.

cognizable claim for civil conspiracy on this basis. 15A C.J.S. Conspiracy § 8 (a plaintiff alleging a conspiracy must have a valid underlying claim that "would be independently actionable" against one of the defendants in the suit); *see also Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. C13-0784-MCE-DAD, slip op. at 4 (E.D. Cal. 2014) ("every member of the alleged conspiracy must be *legally capable* of committing the underlying tort") (emphasis added).[3] The Court concludes that assertion of a civil conspiracy claim against Defendant for interference with a prospective economic advantage would be futile.

### 3. Breach of Contract

Plaintiff's proposed civil conspiracy claim also rests on Defendant's alleged breach of contract. (Dkt. No. 29-2 at 19.) Washington courts have yet to directly address whether a civil conspiracy claim can stem from a breach of contract; however, the Court agrees with Defendant that weight of authority indicates it cannot.

A "[c]ivil conspiracy is, fundamentally, a conspiracy to commit a tort." James L. Buchwalter, 54 CAUSES OF ACTION 2D 603, § 2 (database updated May 2018); *see Beck v. Prupis*, 529 U.S. 494, 501, 503 (2000) ("at common law, it was widely accepted that a plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortious"). In an attempt to expand conspiracy liability to breach of contract, Plaintiff relies on this Court's statement in *Ioppolo v. Port of Seattle* that a civil conspiracy can arise from a tort "or other illegal act." (Dkt. No. 32 at 4) (citing No. C15-0358-JCC, slip op. at 6 (W.D. Wash. Sept. 11, 2015)). Plaintiff stretches the Court's language too far. *Ioppolo* involved a civil conspiracy based on fraud, not breach of contract. No. C15-0358-JCC at 6. Furthermore, when interpreting common law standards for civil conspiracy, courts have limited "wrongful" or "illegal" actions to torts or statutory violations. *See*, *e.g.*, *Empire Fin. Servs. v. Bank of New York*

---

[3] The Court does not reach here the question of whether Plaintiff could impute liability for tortious interference on Defendant by pleading the claim against a third-party defendant and alleged conspiracy between the parties.

*(Delaware),* 900 A.2d 92, 97 (Del. 2006); *Station #2, LLC v. Lynch*, 695 S.E. 2d 537, 541 (Va. 2010). Defendant points to no case where a court has allowed a civil conspiracy claim based purely on breach of contract.

Plaintiff argues in the alternative that Defendant may be held liable for conspiring with a third party that tortiously induced Plaintiff's breach—Wellspring. (Dkt. No. 32 at 4.) As an initial matter, Plaintiff's proposed cause of action for civil conspiracy does not allege tortious inducement. (Dkt. No. 29-1 at 20.) Setting this aside, the Court does not find the out-of-state authority Plaintiff cites in support of its position persuasive because in contrast with those cases, the alleged co-conspirator is not a defendant in this matter. *Cf. Nollman v. Armstrong World Industries, Inc.*, 603 F. Supp. 1168, 1169 (E.D. Mo. 1985) (claims against party and non-party to a contract); *Douty v. Irwin Mortg. Corp.*, 70 F. Supp. 2d 626, 631 (E.D. Va. 1999) (a third party is necessary to create an actionable conspiracy to induce a breach of contract). Absent a third-party defendant and assertion of an underlying claim, the Court will not reach the question of whether Washington law allows for a civil conspiracy claim against a party to a contract based on a co-conspirator's inducement to breach.

For the reasons above, the Court finds that amendment to plead civil conspiracy based on breach of contract would be futile.

### 4. Bid Rigging in Violation of the SGPA

Finally, Plaintiff's proposed amendments include allegations that Defendant conspired with Wellspring to violate Singapore's procurement law (the "SGPA") by "rigging" the procurement process.[4] (Dkt. Nos. 29 at 1, 29-1 at 20.) The SGPA provides an exclusive administrative remedy for violations of its procurement rules: a hearing by the Government Procurement Adjudication Tribunal. SGPA § 7(3). Plaintiff asserts that while the SGPA bars

---

[4] Plaintiff does not plead a separate cause of action for these alleged violations. (*See generally* Dkt. No. 29-1.)

proceedings in Singapore's courts, it does not bar actions in U.S. courts. (Dkt. No. 33 at 10.) This conclusion is based on SGPA language barring "any proceeding in any court," read together with the Singapore's Interpretation Act's definition of "court" as "any court of competent jurisdiction *in Singapore*." (*Id*.) (emphasis added). Foreign legislation establishing an administrative remedy under Singapore law does not create a standalone civil cause of action under U.S. law. Thus, the Court finds no "cognizable and separate" underlying claim based on a violation of Singapore's SGPA. *NW Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) ("[a] civil conspiracy claim fails if the underlying . . . claim is not actionable"). The Court need not delve further into Singaporean law to address whether the procurement at issue was covered by the SGPA. (*See* Dkt. No. 30 at 9–12.) The Court concludes that Plaintiff cannot base a civil conspiracy claim on an alleged violation of Singapore's SGPA.

5. Defendant's Request to Strike Factual Allegations

The Court DENIES Defendant's request to strike Plaintiff's factual allegations related to alleged SGPA violations. (Dkt. No. 30 at 12.)

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend (Dkt. No. 29) is GRANTED in part and DENIED in part. Plaintiff may amend its complaint to add new facts obtained in recent discovery, which are relevant to its breach of contract and misappropriation of trade secrets claim. However, the Court finds that amending the complaint to state a civil conspiracy claim, as proposed, would be futile. On this basis, and the Court DENIES leave to amend the complaint to add a third cause of action for civil conspiracy.

DATED this 22nd day of May 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE